FILED

2013 Jan-23  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JEFFREY L. SMITH, et al.,

       PLAINTIFFS,

vs.                             CASE NO. CV 12-J-3493-S

BIRMINGHAM WATER WORKS,
et al.,

       DEFENDANTS.

## <u>MEMORANDUM OPINION</u>

Pending before the court is the motion to dismiss of the Water Works Board of the City of Birmingham ("BWWB"), and well as BWWB individual employees, sued in both their official capacity and individually,[1] and a brief in support of said motion (docs. 22 and 22-1). The plaintiffs have filed a response (doc. 29) and a motion to dismiss certain claims (doc. 30). Also pending is a motion to dismiss and memorandum filed by defendant Darryl Davis (docs. 26 and 27) to which the plaintiffs have filed a response (doc. 31). Having considered the foregoing, the court finds as follows:

---

[1] The individual defendants filing this motion are Jeff Standridge, Jeff Jenkins, Keith Watt, Reginald Nall, Mac Underwood, and Paul Lloyd. The court shall collectively refer to them as "the BWWB defendants."

## FACTUAL BACKGROUND

The plaintiffs were all employees of the BWWB.  Amended complaint, ¶ 13.

They were all supervised by defendant Darryl Davis, also an employee of the BWWB.

*Id*., at ¶ 14.  In turn, Davis was supervised by defendant Jeff Standridge.  *Id*., at ¶ 15.

Standridge[2] was supervised by defendant Jeff Jenkins, Jenkins was supervised by

defendant Keith Witt, and Witt was supervised by defendant Reginald Nall.[3]  *Id.,* at

¶¶ 16-18.  All of these defendants were under the supervision of defendant Mac

Underwood, General Manager of the BWWB.  *Id.,* at ¶ 19.  According to the

plaintiffs, they were all excellent employees until their termination in August 2012.

*Id*., at ¶¶ 1-8, p. 4-6.[4]  They further allege that until March 2012, none of them were

required to work any significant amounts of overtime.  *Id.,* at ¶ 9, p. 6.

Beginning in March 2012 defendant Davis required the plaintiffs to work

overtime hours on weekends, laying sod around fire hydrants.  Amended complaint,

¶ 10, p. 6.  The plaintiffs were paid for these overtime hours.  *Id*.  However, also

---

[2]The plaintiffs refer to this individual as "Jeff Stanridge."  In defendants memorandum, they refer to him as "Jeff Standridge."  The court has adopted the defendants' spelling.

[3]In the motion to dismiss (doc. 22), defendants spell this name as "Reginald Nall" whereas plaintiffs refer to him as "Reginald Knoll."  The court has used the spelling supplied by counsel for Mr. Nall throughout this opinion.

[4]Because the amended complaint has multiple paragraphs with the same numbering, the court shall cite to the second set of similarly numbered paragraphs by reference to the page number in addition to the paragraph numbers.

beginning in March 2012, the plaintiffs allege that defendant Davis was adding more than the number of overtime hours they each worked to their time sheets.  *Id.,* at ¶¶ 15-16, pp. 7-8.  In return, he then required each of the plaintiffs to pay him their "extra" wages in cash.  *Id*., at ¶¶ 19, 24, p. 8, 9-10.  Additionally, the plaintiffs allege defendant Davis required the plaintiffs to make payments to him for his daughter's cheerleading camp, purchases of Avon lotion his daughter sold, and make contributions to various charities.  *Id.,* at ¶ 19, p. 8.  According to plaintiffs, other supervisors at BWWB were aware of his solicitations.  *Id*., at ¶ 20, p. 8-9.  When plaintiffs inquired concerning the payments, defendant Davis advised them to "keep our mouth shut."  *Id.*, at ¶ 21, p. 9.  This activity continued until late July 2012 when the plaintiffs refused to pay defendant Davis any more money.  *Id*., at ¶ 25, p. 10.

The plaintiffs allege they reported defendant Davis' actions to the Human Resources manager, defendant Paul Lloyd, who informed plaintiffs he would side with Davis.  *Id*., at ¶ 32, p. 11.  The plaintiffs allege they were told the same thing by defendant Nall when they tried to complain to him.  *Id.,* at ¶ 33.  Plaintiff Lay then reported Davis' actions to BWWB supervisor Carol Duncan, who went to Security Director Jones regarding Davis.  *Id.,* at ¶¶ 35-36, pp. 11-12.  Thereafter, on July 26, 2012, the plaintiffs were called individually to the BWWB main office to be questioned by defendant Underwood, defendant Lloyd, and Security Director Jones.

*Id.*, at ¶ 38, p. 12.   The BWWB then took the plaintiffs individually to the Birmingham Police Department.  *Id.*, at ¶¶ 41-42, p. 13.  The following week, all of the plaintiffs were fired.  *Id.*

Based on this set of facts, the plaintiffs brought claims for due process violations pursuant to 42 U.S.C. § 1982 (Count I); retaliation for protected speech pursuant to 42 U.S.C. §1983 (Count II); prevention of free speech (Count III); outrage (Count IV); conspiracy to terminate employees for exercising free speech (Count V); and tortious interference (Count VI).

By motion, the plaintiffs request that the court dismiss Counts V and VI of the amended complaint against defendant BWWB.  The court having considered said motion and being of the opinion said motion is due to be granted, the court shall grant the plaintiffs' motion to dismiss Counts V and VI (doc. 30) against defendant BWWB.

## STANDARD OF REVIEW

In considering a motion to dismiss, the court must construe "the allegations of the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11ᵗʰ Cir.2004); citing *Hill v. White*, 321 F.3d 1334, 1335 (11ᵗʰ Cir.2003).  *See also  Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).  A court should not dismiss a suit on the pleadings alone

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.,* 144 F.3d 732, 735 (11th Cir.1998)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

To satisfy the pleading requirements of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing an entitlement to relief, and must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)(citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

## LEGAL ANALYSIS

*1. Plaintiffs' allegations against defendants Witt, Jenkins and Standridge*:

Defendants assert that the plaintiffs have stated no allegations against defendants Witt and Jenkins, and deleted their reference to defendant Standridge in their amended complaint. BWWB defendants' memorandum, at 5. Plaintiffs respond that, as each of these defendants was a supervisor of defendant Davis, the court may "draw a reasonable inference that these defendants knew of and condoned defendant

5

Davis' actions."

As to defendant Standridge, the court finds that although a close question, the amended complaint sets forth facts sufficient to draw such an inference.[5]  *See e.g.*, amended complaint, ¶¶ 17, 34.  However, the court cannot draw the same conclusion as to defendants Witt and Jenkins.  The plaintiffs do not allege that they ever reported defendant Davis' alleged actions to either of these supervisors or that either of these defendants were present on July 26, 2012, or at any other relevant time such that they could have known of defendant Davis' actions.  The plaintiffs' amended complaint "do[es] not permit the court to infer more than the mere possibility of misconduct," against defendants Witt and Jenkins, hence the complaint stops short of showing the plaintiffs are entitled to relief. *Ashcroft v. Iqbal* 129 S.Ct. 1937, 1950 (2009); citing Fed.R.Civ. Proc. 8(a)(2).

The court shall therefore grant the motion to dismiss the first amended complaint against defendants Witt and Jenkins, but deny the same as to defendant Standridge.

2.  *The § 1982 Due Process Claim:*

Defendants seek to have this claim (Count I of the amended complaint)

_____

[5]However, the amended complaint also sets forth allegations leading to an inference that Davis lied to Standridge when Standridge questioned the overtime amounts on plaintiffs' paychecks.  Amended complaint, at p. 8

dismissed on the ground that §1982 applies to claims for race discrimination. BWWB defendant's memorandum, at 6; defendant Davis' memorandum, at 8. The plaintiffs respond that the designation of Count I pursuant to §1982 is a clerical error and that the plaintiffs meant to state this claim pursuant to §1983.[6] The plaintiffs further seek by footnote to amend their complaint to correct this error. Plaintiffs' response, at 7 n.2.

Having considered the defendants' argument and the plaintiffs' response, the court is of the opinion that the motion is due to be granted to the extent that Count I, as stated in the amended complaint, is due to be dismissed without prejudice. The plaintiffs will be given leave to file an amended complaint setting forth a cause of action for which relief may be granted.

Similarly, the defendants assert that the plaintiffs had no property rights in their employment with the BWWB as asserted in Count I of the amended complaint. BWWB defendants' memorandum, at 7; defendant Davis' memorandum, at 9. The plaintiffs respond that they do not dispute that Alabama is an "at will" employment state nor that whether someone is an "at will employee" is determined by state law. Plaintiffs' response, at 7. However, the plaintiffs then argue that because they were

---

[6]The court questions whether the reference to "deprivation of rights guaranteed by the Fourth and Fourteenth Amendments" in paragraph 2 of the amended complaint is similarly a typographical error.

terminated for "cause," they ceased being "at will" employees.  Because the court has already determined that Count I of the amended complaint is due to be dismissed as plaintiffs concede they have no cause of action under § 1982, the court does not delve into this argument at this time.

    *3. First Amendment Retaliation:*

The BWWB defendants assert that plaintiff's claim for First Amendment retaliation, as set forth in Count II of the amended complaint, is due to be dismissed. BWWB defendant's memorandum, at 9.  These defendants allege that because plaintiffs were terminated for suspected criminal conduct, there is no First Amendment protection.[7]  *Id.*  Both plaintiffs and defendants agree that a First Amendment retaliatory discharge claim is examined under the four part test set out in *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir.1989).

The *Bryson* test examines: "(1) whether the employee's speech involves a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government would have made the same employment decision in the

---

[7]As this issue is before the court on a motion to dismiss, the court has no **evidence** before it as to why the plaintiffs were terminated.

8

absence of the protected conduct." *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1563 (11th Cir.1995) (citing *Bryson*, 888 F.2d at 1565–66).

Applying this test, the first element states that a government employee's speech is protected under the First Amendment if it touches on a matter of public concern. *Akins v. Fulton County*, 420 F.3d 1293, 1304 (11th Cir.2005).  See also  *Travers v. Jones*, 323 F.3d 1294, 1295-96 (11th Cir.2003) ("The law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech.").  In determining whether an employee's speech touched on a matter of public concern, the court looks to "the content, form, and context of a given statement, as revealed by the whole record." *Connick  v. Myers*, 461 U.S. 138, 147-148, 103 S.Ct. 1684, 1690-1691 (1983).  Thus the court must examine whether the "main thrust" of the speech in question is essentially public in nature or private, *Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir.2000), whether the speech was communicated to the public at large or privately to an individual, *Kurtz v. Vickrey*, 855 F.2d 723, 727-30 (11th Cir.1988), and what the speaker's motivation in speaking was.  *Morris v. Crow*, 117 F.3d 449, 457 (11th  Cir.1997).

Turning to the first issue, the court must consider whether the plaintiffs' speech addressed a matter of public concern, or whether it was wholly private in nature.  See e.g., *Battle*, 468 F.3d at 760 (quoting *Garcetti,* 547 U.S. at 418, 126 S.Ct. at 1958).

9

See also *D'Angelo v. Sch. Bd. of Polk County, Fla*., 497 F.3d 1203, 1208–10 (11th Cir.2007).  However, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Abdur-Rahman v. Walker,* 567 F.3d 1278, 1281-1282 (11th Cir.2009) (quoting *Garcetti*, 547 U.S. at 418, 126 S.Ct. at 1958). To state a claim that a government employer took disciplinary action in retaliation for constitutionally protected speech, a public employee must prove, as a threshold matter, that the employee "'spoke as a citizen on a matter of public concern.'" The defendants' motion to dismiss this count of the amended complaint turns on that threshold inquiry.  *Abdur-Rahman*, 567 F.3d at 1281-1282.

The court is mindful that pending is a motion to dismiss, and thus the court must take the factual allegations of the amended complaint as true. The plaintiffs allege that they went to a supervisor that was not their own to complain about their supervisor's actions.  Thereafter, an investigation was launched which culminated in the plaintiffs having to give statements to higher level supervisors within the BWWB and to the Birmingham Police Department.  The defendants assert these statements were in the nature of confessions to a crime, which the plaintiffs' were compelled to make based on their employment.  *See* BWWB defendants' memorandum, at 12.  In contrast, the plaintiffs allege they were terminated in retaliation for speaking to Carol

Duncan, another supervisor with the BWWB.

The Eleventh Circuit has addressed this issue quite specifically, in the context of a police department, stating:

> Clearly, it is a matter of public concern that a police chief and members of his department would tamper with public records .... Such speech relates to a "matter of political, social, or other concern to the community." *See Maggio*, 211 F.3d at 1352 (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684) (describing speech that constitutes a matter of public concern). An attempt to disclose alleged corruption within a police department is speech related to a matter of public concern because "a core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption." *Bryson*, 888 F.2d at 1566; *see also Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir.1996) ("There can be no doubt that corruption in a police department is an issue of public concern."); *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir.1996) (same); *Stanley*, 219 F.3d 1280 (same).

*Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1292 (11th Cir.2000).

Whether the court views the plaintiffs' speech to Ms. Duncan as confessions of theft or reports of extortion, in taking the claims of the amended complaint as true, the speech in question here addressed a matter of public concern. They allege they were attempting to reveal corruption in the BWWB. The fact that the speech in question was made solely in the confines of the workplace is not a pivotal concern. *See e.g., Gonzalez v. Lee County Hous. Auth.*, 161 F.3d 1290, 1296 (11th Cir.1998) (rejecting argument that a plaintiff's speech was not related to a matter of public concern simply because the speech was made solely in the confines of the

workplace); *Morgan v. Ford*, 6 F.3d 750, 754 n. 5 (11th Cir.1993) (recognizing that, although it is a relevant factor, "a court cannot determine that an utterance is not a matter of public concern solely because the employee does not air the concerns to the public"). Thus, the court finds that the plaintiffs' speech in this case was related to a matter of public concern.

Similarly, the court finds that the "employee's interest in speaking outweighs the government's legitimate interest in efficient public service." Referred to as the *Pickering* balancing test, the court applies several factors in the analysis of the government's interest in the efficient provision of public services: "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Bryson v. City of Waycross*, 888 F.2d 1562, 1567 (11th Cir.1989); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Rather than impeding the government's ability to perform efficiently, exposing corruption in government employees promotes efficient public service. The manner, time and place of the speech and the context within which the speech was made were the proper channel for the content of the speech.

The other two elements the court must consider are questions of fact. Whether "the speech played a substantial part in the government's challenged employment

decision;" and whether "the government would have made the same employment decision in the absence of the protected conduct" have been sufficient pleaded in the amended complaint.  Taking the allegations of the amended complaint as true, the plaintiffs clearly claim they were terminated in return for speaking up about Davis' corrupt activities.  Thus, at this stage of the pleadings, the motions to dismiss the plaintiffs' claims for retaliation for First Amendment free speech must be denied.

### 4. Plaintiffs' claims pursuant to § 1983 for suppression of free speech:

Plaintiffs assert in Count III of the amended complaint that the defendants suppressed their rights of free speech.  "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *U.S. v. Alvarez,* 132 S.Ct. 2537, 2543-2544 (2012) (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002).  Here, the plaintiffs allege that their own supervisors either would not listen to them, or told them to keep quiet. Specifically, the plaintiffs allege that Davis told each of them to "keep your mouths shut," and  other supervisors followed Davis' lead.  *See e.g.*, amended complaint at 11 (where plaintiffs allege they reported defendant Davis' actions to defendants Lloyd and Nall, who both informed plaintiffs they would side with Davis); plaintiffs' response, at 17 (stating supervisors made comments such as "he will believe his

13

supervisors over other employees," "if you go around me your ass will be out the door," and "I will back my supervisors").

In *Garcetti*, the Supreme Court noted that exposing "governmental ... misconduct is a matter of considerable significant." *Garcetti v. Ceballos*, 547 U.S. 410, 425, 126 S.Ct. 1951, 1962 (2006). The Court continued:

> public employers should, "as a matter of good judgment," be "receptive to constructive criticism offered by their employees." [*Connick*,] 461 U.S., at 149, 103 S.Ct. 1684. The dictates of sound judgment are reinforced by the powerful network of legislative enactments—such as whistle-blower protection laws and labor codes—available to those who seek to expose wrongdoing. *See, e.g.*, 5 U.S.C. § 2302(b)(8); Cal. Govt.Code Ann. § 8547.8 (West 2005); Cal. Lab.Code Ann. § 1102.5 (West Supp.2006) .... These imperatives, as well as obligations arising from any other applicable constitutional provisions and mandates of the criminal and civil laws, protect employees and provide checks on supervisors who would order unlawful or otherwise inappropriate actions.

*Garcetti*, 547 U.S. at 425-426, 126 S.Ct. at 1962. *See also Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1292 (11th Cir.2000).[8]

_____

[8]In *Oladeinde*, the Eleventh Circuit explained:

Sergeant Oladeinde's and Officer Fields's purpose was to bring possible wrongdoing to light. Simply because the plaintiffs sought permission from their supervisor before reporting the information to the district attorney does not remove their speech from the public's interest. Nor does the fact that the plaintiffs did not report Officer Fields's observations to the district attorney change the fact that the speech suppressed by Captain Walker was related to a matter of public concern. *See Gonzalez v. Lee County Hous. Auth.*, 161 F.3d 1290, 1296 (11th Cir.1998) (rejecting argument that a plaintiff's speech was not related to a matter of public concern simply because the speech was made solely in the confines of the workplace) (citing *Connick*, 461 U.S. at 149, 103 S.Ct. 1684); *Morgan v. Ford*, 6 F.3d 750, 754 n. 5 (11th Cir.1993) (recognizing that, although it is a relevant factor, "a court cannot determine that an utterance is not a matter of

With this instruction from the Supreme Court, the court is of the opinion that the BWWB defendants' motion to dismiss and defendant Davis' motion to dismiss Count III of the amended complaint  are due to be denied at this time.

As against defendant BBWB, for a local government to have liability under 42 U.S.C. § 1983, the plaintiffs must allege that the deprivation of rights about which they complain occurred because of a custom or policy.  See e.g., *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  In support of this claim, the plaintiffs assert that their amended complaint alleges that plaintiffs attempted to speak to their own supervisors as instructed by the BWWB Policy and Procedure Manual.  Plaintiff's response, at 16.  They further assert that in attempting to do so, they were told  "you will shut your mouth" and "[i]f you do report me, you will all lose your jobs."  Amended complaint, ¶¶ 21, 23.  When they attempting to speak to higher level supervisors, their allegations fell on deaf ears.  *Id.,* p. 11.

The plaintiffs also allege that despite a written policy against soliciting money from other employees, defendant Davis did so openly and blatantly, in the presence

---

public concern solely because the employee does not air the concerns to the public"); see also *Dill v. City of Edmond,* 155 F.3d 1193, 1202 (10th Cir.1998) ("[T]he fact that Plaintiff chose a private forum within the police department and the district attorney's office, rather than a public forum, does not remove the speech from First Amendment protection."). We are persuaded that the plaintiffs' speech in this case was related to a matter of public concern.

*Id.*, 230 F.3d at 1292.

of other supervisory employees.  Amended complaint, p. 8-9.  They also assert that

"[d]espite having actual knowledge of the malfeasance on Defendant Davis' part,

Defendants Stanridge Knoll and Human Resources Manager Lloyd tolerated,

condoned and promoted the practice of Defendant Davis."  Amended complaint, p.

11.  Taken together, the court finds these allegations allege a custom or policy which

enabled the deprivation of rights, sufficient to survive a motion to dismiss.  Thus, the

plaintiffs state a viable claim for First Amendment suppression against defendant

BWWB.

     *5. Qualified Immunity*

     The BWWB defendants assert they are entitled to qualified immunity as to all

of the plaintiffs' claims.  BWWB defendants' memorandum, at 23.  If the conduct of

the defendants did not "violate a clearly established right," then qualified immunity

attaches and the court must dismiss this action.  *See Mitchell v. Forsyth*, 472 U.S.

511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Saucier v. Katz*, 533 U.S. 194, 201

(2001).  In determining whether the plaintiff has alleged a violation of a clearly

established right, the court must consider prevailing First Amendment law at the time

of the defendants' alleged conduct, which states that a state employer cannot retaliate

against an employee for engaging in constitutionally protected speech.  *Williams v.*

*Alabama State University*, 102 F.3d 1179, 1182-1183 (11th Cir.1997); citing *Rankin*

*v. McPhereson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987).

The court is of the opinion that retaliation for constitutionally protected speech violated a clearly established right. Given the clarity of this right, and given that the court has found that the speech in question is within the realm of what is constitutionally protected, the court finds qualified immunity does not attach in regard to the plaintiffs' First Amendment claims.

6. *Tort of Outrage* (Count IV)

Defendants assert that because the Alabama Supreme Court has never extended the tort of outrage to employment actions, this claim is due to be dismissed. BWWB defendants' memorandum, at 27-28; defendant Davis' memorandum, at 22. The plaintiffs respond that outrage has been successfully maintained in cases with conduct less egregious than that alleged here. Plaintiffs' response, at 23. While that may be the case, the Alabama Supreme Court has only allowed outrage claims in cases involving (1) family burials; (2) insurance settlements; and (3) egregious sexual harassment. See e.g., *Blow v. Virginia College*, 2012 WL 6685683, *3 (N.D.Ala.2012) (citing *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041 (Ala.1993). The court declines plaintiffs' invitation to extend a claim for outrage, or intentional infliction of emotional distress, to the facts alleged.

17

*7.  Conspiracy (Count V):*

As stated previously, the plaintiffs filed a motion to dismiss this claim against defendant BWWB (doc. 30) and the court shall grant the same.  As to the remaining defendants, the plaintiffs neither move to dismiss them, nor responds to the BWWB defendants' motion to dismiss this claim.  Because employees of a corporation can neither conspire among themselves, nor with their employer, *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1037 (11th Cir.2000), the court shall dismiss this claim against all of the remaining defendants.

*8.  Tortious Interference Count VI):*

As with the claim for conspiracy, the plaintiffs filed a motion to dismiss this claim against the BWWB only.  In their complaint, the plaintiffs allege they reported defendant Davis' unlawful actions and subsequently lost their jobs, which had a detrimental impact on their professional careers.  Amended complaint, at 21.  Because a defendant cannot interfere with its own contract or own business relations, the plaintiffs' allegations fail to state a claim upon which relief may be granted against the BWWB.

As to the remaining defendants, the following elements must be shown "by substantial evidence" to establish a prima facie case of tortious interference with business relations: "(1) the existence of a protectible business relationship; (2) of

18

which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, L.L.C.,* 32 So.3d 5, 14 (Ala.2009).

At this time, the court cannot discern whether the plaintiffs are alleging that the defendant supervisors were acting on behalf of their employer or outside the scope of their authority, and/or acting with actual malice. *See e.g., Henderson v. Early*, 555 So.2d 130, 131-132 (Ala.1989). Those are matters of fact, which the court does not have before it at this time.  Because this claim is before the court on a motion to dismiss, the court shall deny the motion to dismiss as to the remaining BWWB defendants and as to defendant Davis on this claim.

## CONCLUSION

For the reasons set forth herein, the court shall grant the BWWB defendants' and defendant Davis' motions to dismiss in part and deny said motions in part, as follows:

1. Plaintiffs' claims against defendants Witt and Jenkins are dismissed without prejudice.

2.  Count I is dismissed without prejudice.  The plaintiffs are allowed twenty (20) days from today's date to file an amended complaint setting forth a cause of action under the proper section of the United States Code.

19

3.   The BWWB defendants' motion to dismiss plaintiffs' claims for First Amendment retaliation and First Amendment suppression (Counts II and III) is denied.   Defendant Davis' motion to dismiss Counts II and III of the amended complaint is similarly denied.

4.   Plaintiffs' claim for Outrage (Count IV) is dismissed with prejudice.

5.   Plaintiffs' motion to dismiss Count V is granted as to BWWB.  The BWWB defendants and defendant Davis' motions to dismiss this conspiracy claim are granted.  This claim is dismissed with prejudice.

6.   Plaintiffs' motion to dismiss Count VI against the BWWB is granted.  The defendants' motions to dismiss Count VI as to the remaining defendants (Jeff Standridge, Reginald Nall, Mac Underwood, Paul Lloyd and Darryl Davis) are denied.

The court shall enter a separate Order.

**DONE** this the 23rd day of January, 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE